Filed 6/4/15  Katrenick v. Bank of America CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| KASEY KATRENICK,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>　　　Defendants and Respondents. | H039048<br>(Santa Clara County<br>Super. Ct. No. 1-10-CV-171659) |

Plaintiff Kasey Katrenick obtained a $558,000 loan secured by a deed of trust on real property.  She claims her loan servicer, Bank of America Home Loans Servicing (Bank of America), induced her to default on her loan so she would qualify for a loan modification.  She alleges Bank of America then promised a permanent, affordable loan modification, reneged on that promise, and unlawfully initiated foreclosure proceedings.  After she received a notice of trustee's sale, she filed this action against Bank of America and others to enjoin foreclosure of her home.  No sale has occurred in the five and one half years since the notice of default was recorded.

Katrenick appealed the trial court's judgment of dismissal after it sustained the defendants' demurrer to her second amended complaint without leave to amend.  After we issued an order directing Katrenick to correct egregious deficiencies in her appellate briefs, she filed a substitution of attorneys form, to substitute herself in place of her counsel, Andrew Russell Martin.  Then, just two days before oral argument, the parties

filed a stipulation to dismiss the appeal with prejudice because they had settled the case. We ordered the parties to appear for oral argument and thereafter ordered Katrenick and her former counsel, Martin, to show cause why this court should not impose sanctions for unreasonable violations of the California Rules of Court. We have reviewed Katrenick's and Martin's responses to our order to show cause (OSC) and conclude that while the rules violations here are sufficiently egregious to support imposition of sanctions, we will not impose them under the unique circumstances in this case. In light of the parties' stipulation and resolution of the case, we will dismiss the appeal.

## FACTS

In reviewing the propriety of a trial court order sustaining a demurrer, we accept as true all factual allegations properly pleaded. (*Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195, 200.) Accordingly, our summary of the facts is drawn from the allegations of the second amended complaint, the documents attached thereto, and facts the court properly judicially noticed. (*Ibid.*)

Katrenick owns a single-family residence in San José, California (the Property). In May 2005, Katrenick refinanced the Property and obtained the loan that is the subject of this litigation. As part of the transaction, Katrenick executed an interest-only, adjustable rate promissory note (Note) for $558,000. The Note provided that the loan would be repaid over 30 years. To avoid default during the first seven years, the Note required Katrenick to pay interest only at a fixed rate of 5.875 percent, which was $2,731.88 per month. After seven years, the loan would fully amortize and the interest rate would adjust every year. The adjusted interest rate would never be less than 2.25 percent or more than 10.875 percent.

The loan was secured by a deed of trust on the Property (Deed of Trust). The Deed of Trust identified Katrenick as the "Borrower," Preferred Mortgage Banking (Preferred) as the "Lender" and "Trustee," and Mortgage Electronic Registration

2

Systems, Inc. (MERS) "acting solely as nominee for Lender and Lender's successors and assigns" and as the "beneficiary" under the Deed of Trust. The Deed of Trust provided: "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."

In April 2009, almost four years after obtaining the loan, Katrenick sought a loan modification from her loan servicer, Bank of America. Although Katrenick was making her payments and was not in default, she "desperately needed" the loan modification. (The record does not explain why Katrenick needed a loan modification, but in her response to the order to show cause Katrenick states she "was unable to pay her mortgage" after December 2008 because her son's father stopped paying child support after he was laid off work.) Katrenick alleges that Bank of America told her she would not be approved for a loan modification because she was not in default, so she defaulted on her May 2009 payment and all succeeding payments.

On October 21, 2009, ReconTrust Company (ReconTrust) recorded a Substitution of Trustee and Assignment of Deed of Trust (Substitution & Assignment), which (1) assigned the beneficial interest under the Deed of Trust, together with the Note, to U.S. Bank, as "Trustee for the Holders of Bear Stearns ARM Trust, Mortgage Pass-through Certificates, Series 2005-4" (U.S. Bank); and (2) substituted ReconTrust as Trustee in place of Preferred. Six days later, on October 27, 2009, ReconTrust recorded a Notice of Default, which stated that the amount past due was $18,159.86 as of October 9, 2009.

Katrenick "submitted her first loan package" for a loan modification to Bank of America in January 2010. Notwithstanding her request for a loan modification, on April 1, 2010, Katrenick received a notice of trustee's sale (Notice of Sale). The amount due on the loan had increased to $601,731.06 because, by that time, Katrenick's nonpayment had triggered an acceleration clause that required her to pay the full amount of the loan, plus penalties and unpaid interest. The trustee's sale was scheduled for April 29, 2010.

The sale did not take place as scheduled and to date there has been no foreclosure sale. On May 5, 2010, Katrenick received a letter from Bank of America denying her request for a loan modification.

## PROCEDURAL HISTORY

Katrenick filed her original complaint, which asserted 10 causes of action, on May 11, 2010. The named defendants were Preferred, Bank of America, ReconTrust, MERS, and U.S. Bank. All of the defendants, except Preferred, demurred to the original and first amended complaints. (We shall hereafter refer to Bank of America, ReconTrust, MERS, and U.S. Bank jointly as "Defendants.")[1] As a result of the first two demurrers, the trial court overruled demurrers to six of Katrenick's causes of action and sustained demurrers to four causes of action without leave to amend. Although the demurrer to Katrenick's claim for negligent infliction of emotional distress was overruled, Katrenick abandoned that claim in her first amended complaint.

After Defendants answered, Katrenick obtained new counsel (Vernon Bradley) who filed a motion for leave to file a second amended complaint. The proposed second amended complaint asserted fifteen causes of action. It contained 337 paragraphs, was 82 pages long, and was accompanied by 89 additional pages of exhibits. The second amended complaint (1) added factual allegations regarding the loan modification process, (2) dropped two claims that were in the first two complaints, (3) divided the fraud cause of action into four separate claims that alleged different species of fraud, (4) reasserted the previously abandoned negligent infliction of emotional distress claim, and (5) added five new claims. The second amended complaint realleged three causes of action for

---

[1] Katrenick delayed serving Preferred. Preferred filed an answer in August 2012. After the court entered a judgment of dismissal as to Defendants, Katrenick dismissed the action without prejudice as to Preferred. Preferred is not a party to the appeal.

which the court had already sustained demurrers without leave to amend.  The court granted leave to file the second amended complaint.

The second amended complaint alleged, among other things, that Defendants "tricked" Katrenick into defaulting so they would have a "pretext" to foreclose and "Defendants always secretly intended to deny a permanent modification" because they wanted "to 'steal' " the Property and her equity therein.  Katrenick also alleged that Defendants engaged in illegal "dual tracking" (simultaneously pursuing a loan modification while "secretly" seeking foreclosure), and that foreclosure was necessary to cover up "fatal chain-of-title and standing problems" resulting from fraud "committed as part of the securitization debacle."  She asserted that after her loan was securitized, she was no longer obligated to makes payments on the loan, since the investors in the securitized trust had insurance to cover any losses.  And she alleged that Defendants improperly processed her loan modification applications.

Defendants demurred to the second amended complaint on the ground that none of the causes of action stated facts sufficient to state a cause of action.  The trial court struck the causes of action for fraud, unfair business practices, and quiet title because it had previously sustained demurrers to those claims without leave to amend.  The trial court sustained the demurrers to the remaining causes of action without leave to amend and entered a judgment of dismissal.

**DISCUSSION**

### I. *Deficiencies in Katrenick's Briefs and Violations of Rules of Court*

#### A. **Failure to Include a Statement of Facts**

California Rules of Court, rule 8.204(a)(2)(C) provides that an "appellant's opening brief must . . . [p]rovide a summary of the significant facts limited to matters in the record."  (All further rules citations are to the California Rules of Court.)  Rather than

5

include a statement of facts, Katrenick's opening brief states: "Appellant will disclose the relevant facts below in the argument for 'Foreclosure Fraud' and 'Modification Fraud.' All of the facts discussed here are based on allegations in the [second amended complaint] and/or facts from Appellant's securitization expert." What then follows is a combination of legal arguments and six pages listing purported fraudulent acts by "Respondents" without a single record citation. The first time Katrenick mentions any of the Defendants by name is on page 16 of her opening brief. This does not comply with the requirements of rule 8.204(a)(2)(C). (See also *State of California ex rel. Standard Elevator Co., Inc. v. West Bay Builders, Inc.* (2011) 197 Cal.App.4th 963, 968 [failure to provide a statement of facts as required by rule 8.204(a)(2)(C) was a "flagrant violation" of the rule and one factor the court considered in imposing sanctions on appeal]; *Lopez v. C.G.M. Development, Inc.* (2002) 101 Cal.App.4th 430, 435-436, fn. 2 [party that provides inadequate statement of facts "cannot be heard to complain" that appellate court overlooked any material facts on review of summary judgment].)

## B. Failure to Provide Record Citations

Each and every statement in a brief concerning matters that are in the appellate record must be supported by a citation to the record. (Rule 8.204(a)(1)(C); *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745 (*Myers*); *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 (*Barringer*) [record citations in statement of facts do not cure failure to include record citations in argument portion of brief].) This requirement allows the reviewing court to locate relevant portions of the record expeditiously. (*Myers*, at p. 745.) Stating facts without providing a record cite, or citing to a document rather than a specific page or pages in the document, violates this rule. (See, e.g., *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 166 (*Evans*) ["plaintiffs repeatedly cite to 170 pages of their motion to vacate without directing us to specific pages"]; *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th

6

967, 990 ["Sections of the statement of facts in the appellant's opening brief include no record citations at all."].)

When a litigant repeatedly provides no page citations to the record, the rule violation is "egregious[]," significantly burdening the opposing party and the court. (*Evans*, *supra*, 134 Cal.App.4th at pp. 166-167.) "[I]t is counsel's duty to point out portions of the record that support the position taken on appeal." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.) "The appellate court is not required to search the record on its own seeking error." (*Ibid.*)

When a brief fails to refer to the record in connection with the points raised on appeal, the appellate court may treat those points as having been waived. (*Barringer*, *supra*, 102 Cal.App.4th at p. 1239; see also *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799-801 [several contentions waived because the appellant failed to provide record citations demonstrating that he had raised those issues in the trial court].) The appellate court may also ignore unsupported contentions or strike portions of the brief entirely. (*Dominguez v. Financial Indemnity Co*. (2010) 183 Cal.App.4th 388, 392, fn. 2; *Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1024-1025; *Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 391).

There are only six record citations in Katrenick's 54-page supplemental opening brief. Only two of those six record cites are to specific pages or paragraphs in the record. The rest are to the entire second amended complaint (82 pages of allegations, plus 89 pages of exhibits), or to 62 paragraphs of the second amended complaint, or to 56 paragraphs of the second amended complaint. Six pages of the supplemental opening brief list facts that allegedly support Katrenick's various fraud claims: 30 facts in all. But we have no way of knowing, without wading through more than 170 pages without guidance from appellant, whether any of these facts were pleaded in Katrenick's second amended complaint because there is not a single record citation in this part of the brief.

7

And Katrenick's 28-page reply brief contains no record cites at all. Katrenick's briefs egregiously violate the Rules of Court and provide little guidance in analyzing the merits of the challenged judgment.

This is the same conduct Katrenick's appellate counsel, Andrew Russell Martin (State Bar No. 226244),[2] was recently criticized for by the First District Court of Appeal in an unpublished opinion. (*Sato v. Bank of America* (March 2, 2015, A138944); see also *Conrad v. Ball Corp.* (1994) 24 Cal.App.4th 439, 443-444, fn. 2 [appellate court may cite unpublished opinion for background information].) The *Sato* court noted that Martin had filed at least two other briefs in that court that contained the same rules violations and "put [Martin] on notice" that it would consider imposing sanctions should he file an appellate brief in the future that is bereft of proper citations to the record.

Eight months after Martin filed Katrenick's original opening brief, we granted his request to file a supplemental brief to address the effect of a new appellate court decision that was filed two months after the original brief was filed. Rather than file a supplemental letter brief discussing the effect of the new case, Martin filed an entirely new, 54-page opening brief. Neither the original opening brief nor the supplemental opening brief contained a statement of facts or proper record citations. And the brief covers did not comply with rule 8.40(c)(1) because they failed to properly identify which party was filing the brief.

On December 9, 2014, "[t]o conserve limited judicial resources and to ensure the arguments of counsel are not obscured as a result of lengthy, duplicative briefing," we ordered Katrenick to "file a new opening brief, captioned 'Appellant's Amended Opening Brief,' containing a synthesis of the opening briefs filed May 15, 2013, and March 21, 2014, . . . ." Among other things, we ordered that the amended brief "shall contain

---

[2] Martin had worked for Vernon Bradley as an associate on a contract basis and worked on this case in the trial court. After Bradley was adjudicated ineligible to practice law by the State Bar in November 2013, Martin took over the appeal.

appropriate citations to the record in compliance with rule 8.204(a)(1)(C)." We also ordered that if Katrenick wished this court to consider only her supplemental opening brief, she "need not file a synthesis of the two prior briefs but may instead file an amended opening brief identical to the brief filed March 21, 2014, but *with the insertion of appropriate record citations . . . .*" (Italics added.)

Three or four days after we issued our order, Katrenick signed a substitution of attorneys form, which stated she would be representing herself in place of attorney Martin. In light of the substitution, on our own motion, we gave Katrenick 18 additional days to comply with our order. In the order, we stated that failure to cite to the record is a serious rules violation and warned that failure to provide record citations may result in a waiver of Katrenick's contentions on appeal. Katrenick did not file an amended opening brief and never corrected the rule 8.204(a)(1)(C) violations.

### C. Failure to Provide Complete Citations to Legal Authority

Katrenick's supplemental opening brief contains at least seven quotes from case law that are not supported by a pinpoint page citation. It is not helpful to this court to quote from a case and expect the court to search the entire case to find the quoted material. The brief also references "binding" state or federal law in two locations without any citation to legal authority.

## II. *Request for Dismissal of Appeal*

On April 21, 2015, two days before the matter was set for oral argument, the parties filed a stipulation for dismissal of the appeal with prejudice. By that time, the court had expended considerable judicial and staff resources processing the appeal, including: (1) reviewing the 882-page record and the briefs, which exceeded 144 pages; (2) preparing a draft opinion that discussed each of Katrenick's fifteen causes of action, as well as the deficiencies in Katrenick's briefs; (3) issuing four orders regarding

9

Katrenick's briefs; and (4) preparing for oral argument. Since dismissal after the record has been filed is discretionary (rule 8.244(c)(2); *Greb v. Diamond International Corp.* (2103) 56 Cal.4th 243, 247), we directed the parties to appear for oral argument.

Katrenick represented herself at oral argument; Defendants were represented by their counsel of record. Katrenick stated that she had retained another attorney, who was not representing her on appeal, but who had helped her obtain a loan modification. She also stated that she had refinanced her loan on March 9, 2015. Defendants' counsel advised the court that he first learned of the loan modification one week before oral argument, at which time the parties entered into the stipulation to dismiss the appeal. We took the request to dismiss the appeal under submission.

### III. *Order to Show Cause Re Sanctions For Unreasonable Rules Violations*

#### A. Order to Show Cause and Responses Thereto

After oral argument, we issued an order to show cause, which advised the parties that we were considering imposing appellate sanctions for unreasonable violations of the Rules of Court. Therein, we ordered Katrenick and her former attorney, Martin, to show cause why monetary sanctions should not be imposed for the following rules violations: (1) failing to provide record citations (rule 8.204(a)(1)(C)); (2) failing to comply with prior orders of this court directing appellant and Martin to file an amended opening brief that contained appropriate citations to the record (rule 8.204(a)(1)(C)) and a compliant cover (rule 8.40(c)(1)); (3) failing to include a statement of facts in the opening brief (rule 8.204(a)(2)(C)); (4) citing legal rules without citations to authority or pinpoint citations (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368); and (5) failing to procure a copy of the record from opposing counsel or this court after learning that prior counsel had allegedly "misplaced" the record (rule 8.153).

We have received written responses to our order to show cause from both Katrenick and Martin. Katrenick states that she did not know anything about the rules violations and relied on her attorneys to comply with the rules of court in preparing the briefs. Martin argues that (1) it would be inappropriate to sanction him since he "substituted out of this appeal well before the deadline" for the amended opening brief (January 8, 2015), and (2) the "CRC violations could have been fixed if [he] had been given a fair opportunity to file an Amended Opening Brief as ordered." He argues: "**Dispositively, Martin planned to file the Amended Opening Brief to fix all the deficiencies complained of herein**." (Bold in original.) He then states that on December 12, 2014, his partner John Holman e-mailed Katrenick "to warn her that she needed to amend the brief to continue with the appeal." In a declaration, Martin quotes Katrenick's e-mail response to Holman, in which she stated, "Attached is the [substitution of attorney] form you requested." Later that day, Holman sent Katrenick another e-mail that warned her that she needed to comply with our December 9, 2014 order if she wanted her case to "continue" and to file the amended brief by January 8, 2015.

Martin also argues it would be inappropriate to sanction Katrenick. He asks us to "show leniency towards [Katrenick] since she did not seem to understand the risk of monetary sanctions upon improper abandonment of her appeal" and argues that sanctions are not necessary "to protect against recidivism," because Katrenick is unlikely to file another appeal.

### B. Applicable Legal Standards

Rule 8.276 provides in relevant part: "(a) On motion of a party or its own motion, a Court of Appeal may impose sanctions, including the award or denial of costs under rule 8.278, on a party or an attorney for: [¶][¶] (4) Committing any other unreasonable violation of these rules."

11

In *Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869 (*Alicia T.*), the court imposed sanctions for several rules violations by the appellants, including persistent citation of a depublished case, failure to address controlling published authority, no citations to the record, and the addition of irrelevant factual material. The court held the appellants' failure to comply with these rules was "compounded and unreasonable" because after the respondent pointed out the rules violations in its brief, the appellants' counsel violated the same rules in his reply brief. (*Id.* at pp. 884-885.) The court stated: "This court does not assess sanctions in a haphazard or spontaneous manner. In this instance, our purpose is to emphasize the substantial additional time required to craft an opinion when the court rules are ignored as flagrantly as they are herein. The public fisc is limited, and justices and support staff must carefully monitor and utilize their resources." (*Id.* at p. 885.) The court concluded that although the appeal in *Alicia T.* could not "be viewed as frivolous," sanctions were "appropriate to deter future similar violations of the court rules." (*Ibid.*)

The *Alicia T.* court acknowledged that under former rule 18, now rule 8.204(e), when a brief fails to comply with the rules on briefs, "the defective briefs may be: (a) returned to counsel for correction and redeposited with the court within a specified time, (b) ordered stricken with leave to file a new brief within a specified time, or (c) considered as if properly prepared." (*Alicia T.*, *supra*, 222 Cal.App.3d at pp. 885-886.) But the court rejected those options "because the violations in issue . . . involve more than the mere form of the brief. Counsel's refusal to desist in the citation of an opinion ordered not to be published and failure to address controlling published authority merits, in our view, a more severe sanction than those set forth in [former] rule 18."

The *Alicia T.* court conducted a hearing after oral argument on the propriety of awarding sanctions. The court estimated "the average cost to process a civil appeal at a conservative $3,995." (*Alicia T.*, *supra*, 222 Cal.App.3d at p. 886.) Based upon that estimate and the hearing, the court assessed sanctions against the appellant's counsel of $

750 "to compensate for the difference between the cost to process, review and decide this case had it been properly presented, and the cost to perform these tasks on the briefs filed." (*Ibid.*)

### C. Analysis

Martin cites *Steketee v. Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46 (*Steketee*) and *Stuart v. Superior Court* (1992) 14 Cal.App.4th 124 (*Stuart*) for the proposition that an attorney cannot be held liable for failing to meet deadlines that expire after the attorney ceases to represent the client and is replaced by other counsel. In *Steketee*, the plaintiff sued a law firm and two of its attorneys for legal malpractice, claiming the attorneys allowed the statute of limitations on the plaintiff's medical malpractice action to expire. The California Supreme Court found that the statute of limitations ran on the plaintiff's medical malpractice action in September 1979. However, the plaintiff had discharged the defendant attorneys in January 1979 and obtained other counsel. Affirming summary judgment for the defendants, the Supreme Court held that "[a]n attorney cannot be held liable for failing to file an action prior to the expiration of the statute of limitations if he ceased to represent the client and was replaced by other counsel before the statute ran on the client's action." (*Id.* at p. 57; accord, *Stuart*, at pp. 127-128 [attorney not liable for legal malpractice for failing to serve summons and complaint and file proof of service with the court within the time prescribed by statute where attorney had ceased to be the attorney of record three months before the " 'critical time in question' "].) Citing *Steketee* and *Stuart*, Martin argues that he "was relieved of any responsibility for [Katrenick's] failure to amend the opening brief and, indeed, had no legal power to take such action during the relevant period."

This case is distinguishable from *Steketee* and *Stuart* because Martin prepared the supplemental opening brief. He was thus responsible for the (1) failure to cite to the record, (2) the non-complaint cover, and (3) the inappropriate, duplicative nature of that

13

brief, all of which prompted our December 9, 2014 order. He was also responsible for failing to include a statement of facts and failing to provide complete citations to legal authority. The question becomes whether Martin can avoid sanctions because he did not have "a fair opportunity" to comply with our December 9, 2014 order and correct the errors after he substituted out of the case.

Our December 9, 2014 order was, in effect, an order under rule 8.204(e)(2)(A) ordering Katrenick's brief "returned for corrections and refiling within a specified time." While *Alicia T.* outlines the applicable standards to be followed when imposing sanctions for violating the Rules of Court, Martin does not cite any cases that address the propriety of sanctioning counsel where the court has ordered correction of a brief under rule 8.204(e)(2)(A) and counsel then substitutes out of the case before the deadline for filing a corrected brief. We conclude that while *Steketee* and *Stuart* involve claims for legal malpractice, they support the conclusion that it would be inappropriate to sanction Martin for failing to comply with this court's December 9, 2014 order after he substituted out of the case. While the rules violations and the last-minute dismissal has resulted in the waste of *significant* judicial and staff resources in this case, and the rules violations here are sufficiently egregious to warrant the imposition of sanctions, we conclude that since Martin substituted out of the case before he had an opportunity to comply with our December 9, 2014 order, we will not sanction him in these circumstances. And under the circumstances of this case, we will also exercise our discretion not to sanction Katrenick, and we will grant the parties' request to dismiss the appeal.

Martin has one other appeal pending in our court. In his response to our order to show cause, he "promise[d] that all future briefs will fully comply with all Rules of Court" and stated he would seek leave to amend the brief in the pending matter "to ensure full compliance." We will hold him to this promise.

14

## DISPOSITION

The appeal is dismissed with prejudice.  In accordance with the parties'
stipulation, the remittitur shall issue immediately.  And as stipulated, the parties shall
bear their own costs and attorney fees.

_____

Márquez, J.

WE CONCUR:

_____

Rushing, P. J.

_____

Premo, J.